Daniel A. DONALD, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 23A04–0912–CR–685.

Court of Appeals of Indiana.

July 22, 2010.

Stacy R. Uliana, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary and Issue

Daniel A. Donald appeals the trial court's denial of his request for a competency evaluation prior to his probation revocation hearing. Donald contends that he was entitled to a competency evaluation pursuant to Indiana statute and the Due Process Clause of the United States Constitution. We disagree with Donald's statutory argument, but we agree that the Due Process Clause may warrant a competency evaluation prior to a probation revocation hearing. Therefore, we reverse and remand for further proceedings consistent with this opinion.

### Facts and Procedural History

Donald is a diabetic and suffered from a stroke on December 22, 2004, which left him with memory loss and speech, reading, and writing impairments. On August 14, 2006, Donald pled guilty to class B felony dealing in methamphetamine. The trial court sentenced Donald to ten years, all suspended to probation, with the first six years under the supervision of the West

Central Regional Community Corrections ("WCRCC").

Donald was serving a home detention sentence with WCRCC when on August 17, 2009, Surveillance Officer Lonnie Jones stopped by Donald's home to collect a urine sample for drug testing. Donald's father indicated that Donald was ill, and Donald was unsuccessful at providing a urine sample. Officer Jones instructed Donald to drink water or Gatorade while Officer Jones visited another client and to call when he felt he could provide a urine sample.

Forty minutes later, Officer Jones received a call indicating that Donald was ready to provide a sample. When Officer Jones arrived fifteen minutes later, Donald was running around the front yard wearing only his underwear. Donald told Officer Jones that he needed to use the restroom, and Officer Jones gave him the sample cup. Donald turned away and immediately filled the cup. When Officer Jones was in front of Donald, Officer Jones noticed that urine was still coming out of Donald's underwear but not from Donald's exposed penis. A blue latex glove with a black tie fell out of Donald's underwear, and Donald threw it across the yard.

As Officer Jones tried to retrieve the glove, Donald tried to block him and cussed at Officer Jones. When Officer Jones stated that he was taking the glove, Donald presented a tactical survival knife and held the open blade between himself and Officer Jones. Officer Jones removed the knife from Donald's hands and tried to take it to the house to give to Donald's parents. Donald became more agitated and tried to block Officer Jones. Officer Jones told Donald to sit in the recliner, settle down, take a shower to wash off the stale urine smell, and that Officer Jones would wait for him and try to get another

sample. Donald remained uncooperative then fled the house and ran to the unattached garage.

Officer Jones and Donald's father followed Donald and tried to get him to settle down, but Donald was "in a complete outrage, and he was ransacking the garage, throwing items around." Tr. at 14. Donald picked up a shotgun and continued to cuss and say that he was not going back to jail. Officer Jones commanded Donald to put down the weapon. Donald struggled to get the shotgun to function and waved the shotgun in the direction of Officer Jones at least three times. Donald slammed the shotgun down on the floor, and Officer Jones retrieved the shotgun and locked it in his trunk before returning to the garage.

Donald collapsed, and Officer Jones and Donald's father assisted him to a lawn chair. Officer Jones called for backup, and when the sheriff's car arrived in the driveway Donald ran into the woods behind his home. The chief surveillance officer, who had good rapport with Donald, called for Donald to come out of the woods, and he did so a few minutes later. Donald was transported to St. Claire Medical Center in Crawfordsville. On the way, Donald admitted to Officer Jones that he had obtained four methamphetamine rocks from an acquaintance and taken some of it. Donald tested positive for methamphetamine, and he was transported to the Montgomery County Jail. On August 18, 2009, WCRCC filed a verified petition to revoke or modify community corrections placement alleging that Donald violated the conditions of his placement by using alcohol and a controlled substance, leaving his residence, committing a criminal offense, possessing a firearm, and committing the act of escape.

At a hearing on November 6, 2009, Donald's attorney requested and was granted

a thirty-minute consultation with Donald. Since Donald's attorney believed that Donald did not have the ability to comprehend and assist in the revocation proceedings, he orally requested a competency evaluation pursuant to Indiana Code Section 35–36–3–1(a), which reads in pertinent part as follows:

> If at any time before the final submission of any criminal case to the court or the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of a defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability.

The prosecutor did not object and stated, "[W]e are aware that the defendant is suffering from some kind of condition, we just simply don't know what the details are." *Id.* at 5. The trial court took the request under advisement, but ultimately denied the request. The court found that Donald did not have standing to ask for a competency evaluation under Indiana Code Section 35–36–3–1 because Donald's request did not deal with competency to stand trial, and it also found that the request was untimely.

At a revocation hearing on November 10, 2009, the court found that Donald violated the terms of his community corrections placement by committing a new offense and by testing positive for methamphetamine. The court revoked Donald's probation and ordered him to execute his ten-year sentence at the Department of Correction.

### Discussion and Decision

■ Donald first argues that Indiana Code Section 35–36–3–1 should apply to probation revocation hearings. When interpreting the meaning of a statute, our primary goal is to determine and effectu-

ate the legislative intent. *McCown v. State,* 890 N.E.2d 752, 756 (Ind.Ct.App. 2008). When determining legislative intent, we consider the objectives and the purposes of the statute in question and the consequences of the statute's interpretation. *Id.* "We look to the plain language of the statute and attribute the common, ordinary meaning to terms found in everyday speech." *Id.* By its own terms, Indiana Code Section 35–36–3–1(a) applies only "*before* the final submission of any criminal case to the court or the jury trying the case." (Emphasis added.) We find that Donald did not have a statutory right to a competency hearing because he was not standing for trial, but rather was participating in a probation revocation hearing, which is a matter that takes place *after* the final submission of a criminal case to the trier of fact.

■ Donald also argues that the trial court denied him due process when it denied his request for a competency evaluation at the probation revocation hearing. Although we do not agree with Donald that Indiana Code Section 35–36–3–1 applies to probation revocation hearings, we do believe that the Due Process Clause of the United States Constitution requires that a defendant be competent when participating in a probation revocation hearing.

■ A probation revocation hearing is in the nature of a civil proceeding. *Baxter v. State,* 774 N.E.2d 1037, 1044 (Ind.Ct. App.2002), *trans. denied.* Even though probationers do not receive the full array of constitutional rights that defendants at trial receive, the Due Process Clause of the United States Constitution does impose procedural and substantive limits on the revocation of the conditional liberty created by probation. *Woods v. State,* 892 N.E.2d 637, 640 (Ind.2008). A probationer

at a revocation hearing is entitled to the following minimum requirements of due process: "(a) written notice of the claimed violations of probation; (b) disclosure of the evidence against him; (c) an opportunity to be heard and present evidence; (d) the right to confront and cross-examine adverse witnesses; and (e) a neutral and detached hearing body." *Cooper v. State,* 917 N.E.2d 667, 672 (Ind.2009). The due process requirements are codified in Indiana Code Section 35–38–2–3, which requires that an evidentiary hearing be held on the revocation and that probationers are allowed to confront and cross-examine witnesses. *Id.*

Other jurisdictions have found that due process requires that probationers be competent at probation revocation hearings. *See Hayes v. State,* 343 So.2d 672 (Fla.Ct. App.1977) (holding that trial court should not have denied defendant's request for competency evaluation during probation revocation proceedings) (per curiam); *State v. Davis,* 127 Ill.App.3d 49, 82 Ill. Dec. 110, 468 N.E.2d 172, 181 (1984) (finding that conditional discharge revocations are analogous to probation revocations and holding that a defendant is entitled to a fitness hearing prior to a revocation proceeding if his competency is questioned by the court or the parties); *Commonwealth v. Megella,* 268 Pa.Super. 316, 408 A.2d 483, 486 (1979) (finding that revocation of probation and subsequent re-sentencing of defendant who is mentally incapable of participating in the proceeding is a violation of due process).

Other courts have reasoned that the due process rights set forth for probation revocation hearings, "including the opportunity of the defendant to be heard and present witnesses and the right to confront and cross-examine witnesses, 'may be rendered null if the defendant is not competent to understand and to participate in or to as-sist counsel in participating in the proceedings.'" *State v. Chambers,* 151 Ohio App.3d 243, 783 N.E.2d 965, 968 (2002) (quoting *State v. Qualls,* 50 Ohio App.3d 56, 552 N.E.2d 957, 960 (1988)). In addition, other courts have found that defendants are entitled to a competency hearing during a probation revocation proceeding because a probation revocation hearing is similar to a criminal proceeding in that "the defendant's liberty is at stake, and his ability to assist in his own defense may be determinative of the outcome of the revocation hearing." *Hayes,* 343 So.2d at 673. We agree with these cases and adopt their reasoning. Without competency, the minimal due process rights guaranteed to probationers at probation revocation hearings would be rendered useless.

Here, the trial court's denial of Donald's request for a competency evaluation was based on the assumption that Donald did not have standing under Indiana Code Section 35–36–3–1 to request a competency evaluation. Although Donald did not have a right to a competency evaluation under Indiana Code Section 35–36–3–1, he did have a due process right to a competency evaluation prior to his probation revocation hearing if it was warranted. In the trial context, it is within the sound discretion of the trial court whether reasonable grounds exist to order a competency evaluation, and that decision will be reviewed only for an abuse of discretion. *Cotton v. State,* 753 N.E.2d 589, 591 (Ind.2001). Here, the trial court did not reach the issue of whether there were reasonable grounds for a competency hearing. Regardless, the trial court was put on notice, given Donald's attorney's oral request for the competency evaluation based on the thirty-minute consultation and Donald's previous medical history, that further inquiry may have been warranted. Moreover, the

State acknowledged that Donald was suffering from some kind of condition but was unaware of the details. Since the trial court denied Donald's request for a competency hearing based on its belief that he did not have standing, the issue of whether or not reasonable grounds existed to order a competency evaluation was never addressed. Donald should be allowed to address that issue. Therefore, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BAKER, C.J., and DARDEN, J., concur.