ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana



FILED

Aug 10 2017, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

Derek Hutchison,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 10, 2017

Court of Appeals Case No.
48A02-1702-CR-340

Appeal from the Madison Circuit
Court

The Honorable Mark Dudley,
Judge

Trial Court Cause No.
48D01-0605-FB-118

**Bradford, Judge.**

# Case Summary

[1] In 2006, Appellant-Respondent Derek Hutchison pled guilty but mentally ill to Class B felony rape. In exchange for Hutchison's guilty plea, Appellee-Petitioner the State of Indiana ("the State") agreed to dismiss other pending charges. The trial court accepted Hutchison's guilty plea and sentenced him to a term of twenty years, with fifteen years executed in the Department of Correction ("DOC") and five years suspended to probation.

[2] On November 4, 2016, the State filed a petition alleging that Hutchison had violated the terms of his probation by committing several new criminal offenses, including unlawful entry by a serious sex offender. An evidentiary hearing was conducted on January 10, 2017, at which Hutchison was represented by an attorney. At the conclusion of the hearing, the trial court found that Hutchison had violated the terms of his probation. Thereafter, the trial court revoked Hutchison's probation and ordered him to serve the entire five-year, previously-suspended sentence. Neither Hutchison, who claims to suffer from mental illness, nor his attorney requested a competency hearing at any time before or during the evidentiary hearing.

[3] On appeal, Hutchison contends that the trial court committed fundamental error by failing to conduct a competency hearing before revoking his probation. Concluding otherwise, we affirm.

# Facts and Procedural History

[4] Our memorandum decision in Hutchinson's prior direct appeal, which was handed down on November 16, 2007, instructs us to the underlying facts and procedural history which have led to the instant probation revocation proceeding:

> On February 14, 2006, eighteen-year-old Hutchison accompanied his mother to St. Joseph's Hospital in Anderson after she complained of a fever. At some point that evening or after midnight, Hutchison began roaming around the hospital. Initially, he entered the room of eighty-five-year-old patient L.A. L.A. awoke to find Hutchison sitting on her bed and rubbing his hand across her face. L.A. stated she "fear[ed] for her life." Appellant's Appendix at 76. As he left her bedside, Hutchison ran his hand along L.A.'s breast.
>
> Shortly after leaving L.A.'s room, Hutchison entered the room of ninety-two-year-old L.E., also a patient at the hospital. L.E. was comatose and had various medical devices assisting her, including an IV, an oxygen machine, and a waste extraction tube. After attempting to wake L.E., Hutchison lifted L.E.'s hospital gown, climbed on top of her, and had vaginal intercourse with her for approximately two to three minutes.
>
> Anderson police officers responding to these incidents found Hutchison hiding in a basement office of the hospital. The door to the office was locked, but Hutchison had gained access by climbing over a wall that separated the office from the hospital's common area. When officers apprehended Hutchison, he was carrying a plastic tub that contained various items, including personal planners, soft drinks, candy, and music CDs, all of which were hospital property.
>
> The State charged Hutchison with burglary, a Class C felony; theft, a Class D felony; and sexual battery, a Class D felony, based on the incidents in the basement office and with L.A.

Shortly thereafter, the State charged Hutchison with rape, a Class B felony, based on the incident with L.E. The parties agreed that Hutchison would plead guilty to the rape charge and that the State would dismiss the burglary, theft, and sexual battery charges. Sentencing was left to the trial court's discretion, except that the executed portion of Hutchison's sentence could not exceed fifteen years.

After accepting Hutchison's plea of guilty but mentally ill, the trial court conducted a sentencing hearing. Thereafter the trial court issued a sentencing statement, which reads in relevant part as follows:

> The Court finds aggravation: 1) Prior juvenile criminal and delinquent acts; 2) The defendant is in need or correctional and/or rehabilitative services that can best be provided by commitment to a penal facility; 3) The advanced age of the victim; 4) The victim was physically infirm at the time of the instant offense; and 5) Prior attempts at rehabilitation have not been successful. The Court finds mitigation: 1) The defendant plead [sic] guilty to the Instant Offense, saving the State the time and cost of a trial; 2) Defendant has a pattern of mental illness and diagnosis, none of which constitutes a defense; and 3) Defendant's highly dysfunctional home environment and a life of instability.

*Id*. at 113. Based on these findings, the trial court sentenced Hutchison to a total sentence of twenty years, with fifteen years executed and five suspended.

*Hutchison v. State*, 48A02-1611-CR-1059, *1-2 (Ind. Ct. App. Nov. 16, 2007) (footnote omitted). Hutchinson's sentence was affirmed on direct appeal. *Id*. at

*4.  In affirming Hutchinson's sentence, we noted the following about his mental state:

> The record discloses a history of psychiatric treatment and mental illness.  The PSI states Hutchison was diagnosed with Attention Deficit Hyperactivity Disorder when he was three years old and, following an evaluation, was recommended for placement in a psychiatric facility as early as 2002.  However, two psychiatric evaluations prepared for a competency hearing conclude Hutchison "is capable of determining right from wrong and can understand the wrongfulness of his behavior ....," appellant's app. at 79, and that although Hutchison "presents himself as someone who is unable to control behavior and does not even remember his behavior.... [H]e was able to understand the wrongfulness of the conduct at the time of the offense and does not have a psychiatric disorder that interferes with that," *id*. at 83.
>
> Moreover, Hutchison's statements at the sentencing hearing do not indicate any nexus between his mental illness and the offense.  Describing his illness as a "demonic spirit," Hutchison initially credited, but ultimately disavowed, his illness's role in the commission of the crime:
>
>> What I feel I did was wrong, stupid, it was out of this world.  I mean, sometimes I feel like it was a demonic spirit pulling me in and I had smoked, I mean, I had a [sic] very first experience with marijuana that day, had smoked like a quarter of a joint, but I do not use that as an excuse for my behavior.  Nothing is.  Not even the demonic spirit.  What I did was completely intentional and I take full responsibility for it.
>
> *Id*. at 150.

*Id.* at *3. Hutchison was released from incarceration and placed on probation on or about October 21, 2016.

[5] On November 4, 2016, the State filed a petition alleging that Hutchison had violated the terms of his probation by committing several new criminal offenses, including unlawful entry by a serious sex offender. An evidentiary hearing was conducted on January 10, 2017, at which Hutchison was represented by an attorney. It is of note that neither Hutchison nor his attorney requested a competency hearing at any time before or during the evidentiary hearing.

[6] During the evidentiary hearing, the State presented evidence indicating that on November 1, 2016, Elwood Police Officer Sherry Wright was working as a school resource officer at Elwood Junior-Senior High School when she encountered Hutchison. Hutchison came into the school office during school hours, identified himself as Mitchel Cruz, and indicated that he had come to speak with a student, M.R. When asked how he had gotten into the school, Hutchison indicated that "another student had let him in." Tr. Vol. II, p. 33. Hutchison left the school after Officer Wright advised him that the school officials "didn't pull kids out of a classroom just to come down and speak with other people in the office." Tr. Vol. II, p. 33.

[7] The next morning, Elwood Police Officer Andy McGuire was on patrol at the school when he observed Hutchison riding a bicycle between an elementary school and the junior-senior high school. About this same time, M.R.'s mother

approached Officer McGuire and expressed concern that Hutchison had attempted to pick her daughter up from school the day before.

[8] After speaking with M.R.'s mother, Officer McGuire approached Hutchison. Hutchison identified himself as Mitchell Cruz and told Officer McGuire that "he wanted to apologize to [M.R.'s mother] because for the confusion as what, as he put it for trying to pick her daughter up the day prior." Tr. Vol. II, p. 15. Hutchison gave Officer McGuire what he claimed was his parents' phone number. He told Officer McGuire that he lived with his parents at a residence located on South 25th Street. Hutchison also told Officer McGuire that "he had graduated early and that he was just confused and didn't really know where he was and he was trying to find his way home." Tr. Vol. II, p. 15. Officer McGuire pointed Hutchison in the direction of South 25th Street.

[9] In light of M.R.'s mother's concern, Officer McGuire decided to follow Hutchison home and make sure that his parents were aware of what had happened at the school. Officer McGuire testified that

> So I drove down, down the street, was not able to locate him, went down to South 25th Street and kept going south and he ended up almost running into my car around South 8th Street and 25th Street. And then I asked him what he was doing, he looked shook up. Told me that he was confused, he was looking for his house. I asked him where that was. He said that it was over the railroad tracks. I said well you've went over the railroad tracks and many blocks since then. And then I said the phone number you gave me because I tried calling his mom as well, the phone number didn't come back to a working number. And he just looked concerned and upset and didn't know what to say. I

said I'll just follow you to your house then so I can talk to your parents directly. So when I followed him to his house he stopped one time to wave towards the house, asked why I was still following him there. I said just so I can make sure that your parents are aware of what's going on and you're trying to pick up juveniles from the school. We get to the apartment. As I'm starting to get out of the car I said hey just wait right there, I said I'll walk in with you and he almost sprints in a very fast pace walk to the house, uses a key and gets in the door and then later was identified to me was his stepfather I believe was there at the door too kind of confused. He allowed me in and I walked into the backroom, which was his mother's bedroom with him and she referred to him by his real name[.]

Tr. Vol. II, pp. 16-17. When asked why he would give Officer McGuire a false name, Hutchison indicated that he "wanted to talk to his probation officer." Tr. Vol. II, p. 17. Hutchison's mother then informed Officer McGuire that Hutchison "was on probation for rape." Tr. Vol. II, p. 18.

[10] Upon receiving this information, Officer McGuire transported Hutchison to the police department for an interview. Hutchison consented to be interviewed after Officer McGuire informed him of his rights. During this interview, Hutchison indicated that he had attempted to approach M.R. because she reminded him of "an ex-girlfriend of his and he couldn't get her out of his mind and kept thinking about her" after he encountered M.R. and a group of her friends "trick or treating" on Halloween. Tr. Vol. II, p. 18. Hutchison also indicated that on October 30, 2016, he had been found in a Sunday school class for five-year-olds at East Main Street Church, which also housed the Noah's Ark Preschool.

[11] Hutchison did not dispute that he had entered the school on November 1, 2016 or had been present on school property on November 2, 2016. He acknowledged his legal name during the evidentiary hearing but also provided several aliases. However, he did dispute the fact that he was twenty-eight years old, claiming that he was seventeen years old.

[12] Hutchison admitted that he had been convicted of rape "ten (10) years ago" but indicated that he did "felt that there was nothing wrong with being in schools." Tr. Vol. II, p. 43. Hutchison indicated that he did not fully understand the advisement of rights which had been given to him by Officer McGuire on November 2, 2016, and that prior to giving his statement, he had asked to see his therapist, Doctor Walter Campbell, who he had been seeing since August of 2012. Hutchison also indicated that his current psychiatric diagnosis was "severe post-traumatic stress disorder" which he claimed stemmed from "my being sexually abused when I was eight (8) years old and from, from the, an explosion in the Navy Seals[1] and that left me with mild traumatic brain injury." Tr. Vol. II, p. 44. Hutchison further indicated that he had previously been diagnosed with borderline personality disorder.

[13] At the conclusion of the evidentiary hearing, the trial court found that Hutchison had violated the terms of his probation. In making this finding, the trial court stated the following:

---

[1] It does not appear that Hutchison was ever a member of the United States Navy, much less the Navy Seals.

Mr. Hutchison you really have some issues but not issues to the point where they dil, debilitate you to not knowing what you are doing. I do have your DOC progress report. There is certainly notations [sic] about the treatment that the DOC provided that you refused. I'm fully aware of all of this Mr. Hutchison…. I'm going to impose a sanction here, but I want you to understand. It's not because I think you … have no issues in your life. You clearly do sir but I have very clear rules that were applied to you that were informed to you upon your release from the DOC. One of those was not to be on school property.

Tr. Vol. II, p. 60. Thereafter, the trial court revoked Hutchison's probation and ordered him to serve the entire five-year, previously-suspended sentence. This appeal follows.

# Discussion and Decision

[14] Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled. The trial court determines the conditions of probation and may revoke probation if the conditions are violated. Once a trial court has exercised its grace by ordering probation rather than incarceration, the judge should have considerable leeway in deciding how to proceed. If this discretion were not afforded to trial courts and sentences were scrutinized too severely on appeal, trial judges might be less inclined to order probation to future defendants. Accordingly, a trial court's sentencing decisions for probation violations are reviewable using the abuse of discretion standard. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances.

*Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007) (internal citations omitted).

[15]    In the instant matter, Hutchison does not argue that the evidence is insufficient to prove that he violated the terms of his probation or that the trial court abused its discretion in ordering him to serve the entire five-year balance of his previously-suspended sentence. Rather, Hutchison argues that the trial court committed fundamental error by failing to order a competency evaluation before finding that he had violated the terms of his probation.[2]

[16]    "The 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006).

> The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009). This exception is available only in "egregious circumstances." *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003).

*Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010).

[17]    In arguing that the trial court committed fundamental error, Hutchison relies on our opinion in *Donald v. State*, 930 N.E.2d 76 (Ind. Ct. App. 2010). In *Donald*, the appellant requested a competency evaluation prior to his probation

---

[2] In making this argument, Hutchison acknowledges that because he did not raise the issue of the competency evaluation below, he is only entitled to relief if the trial court is found to have committed fundamental error.

revocation hearing. 930 N.E.2d at 79. The trial court denied this request, conducted an evidentiary hearing, and revoked the appellant's probation. *Id.* On appeal, we concluded that one has a due process right to a competency evaluation prior to a probation revocation hearing if such an evaluation is warranted. *Id.* at. 80. "[I]t is within the sound discretion of the trial court whether reasonable grounds exist to order a competency evaluation and that decision will be reviewed only for an abuse of discretion." *Id.* We further concluded that the trial court committed fundamental error because it "did not reach the issue of whether there were reasonable grounds for a competency hearing" after a request for such an evaluation was raised by the appellant. *Id.* Unlike in *Donald*, however, neither Hutchison nor his attorney requested a competency evaluation at any point prior to or during the evidentiary hearing. Hutchison's reliance on this opinion is therefore unavailing.

[18] Hutchison also cites to the pre-sentence investigation report ("PSI") that was completed in connection to the underlying matter following his guilty plea. As to Hutchison's mental state at the time of sentencing, the PSI provides, in relevant part, as follows:

> The defendant has a long history of psychiatrict [sic] care. It appears he was diagnosed with Attention Deficit Hyperactivity Disorder when he was a mere three years old. He was ordered for treatment at Behavior Corp. as early as March of 1998….
>
> A psychiatric evaluation prepared October 28, 2002 by Dr. Steven H. Berger evaluates the defendant as simply unsocialized, rather than psychiatrically ill. A psychiatric evaluation prepared October 24, 2002, by Ph.D. David F. Strus states that the

defendant is developing a Mixed Personality Disorder. He is a very disturbed young man, has had highly inappropriate models and has lived and been raised in an incredibly dysfunctional family. He has very little understanding of how relationships work and very little concept of how one controls one's own actions. Furthermore, he believes the defendant is not truly suicidal, but he is so unstable and so unpredictable that he would need to be placed under precautionary status. An evaluation prepared by Michael Walker, Educational Doctor for Psychological Consultation, prepared October 28, 2002, describes the defendant as of low average intelligence, extremely impulsive, and unable to delay immediate gratification. Although not demonstrating any psychotic features, rather is an impulse-driven individual, his risk being in his impulsiveness and inability to delay gratification. A follow-up psychological evaluation dated October 31, 2002, written by David F. Strus, Ph.D., states that the defendant is incredibly immature, has almost no judgment-making capacity, is an attention-seeking man who really doesn't mean to be harmful or hurtful particularly, but will do whatever is required to create a stir and focus attention upon himself. A psychological evaluation prepared June 5, 2006, by Dr. Susan M. Anderson diagnosed the defendant with Anti-[S]ocial Personality Disorder and Borderline Personality Traits, a history of Post[-]Traumatic Stress Disorder, and Sexual Paraphelia. He was found competent to stand trial. The Summary states the defendant has a long history of Conduct Disorder and now as an adult, Anti-Social Personality. There is no evidence he was under the influence of drugs at the time of the offense, nor psychotic. He presents as someone who is unable to control nor remember his behavior. However, the doctor believes he was able to understand the wrongfulness of his conduct at the time of the offense, and he does not have a Psychiatric Disorder interfering with his conduct. A psychological evaluation prepared and filed with the Court June 30, 2006, by Thomas E. Murray, Ed.D. Psychologist, summaries his findings as the defendant being able to determine right from wrong and understanding the wrongfulness of his behavior. It is

> believed the defendant is competent to stand trial, experiencing some limitations in assisting his counsel, with significant evidence of a mental defect or disorder not present during the interview.

Appellant's App. Vol. II – Confidential, pp. 21-22. As is stated in the above-quoted section, Hutchison was found competent to stand trial in 2006. Hutchison has provided no evidence that his mental condition has seriously deteriorated since that time.

[19] It is well-established that "'not all mental conditions are serious enough to relieve one of criminal responsibility.'" *Anderson v. State*, 699 N.E.2d 257, 261 (Ind. 1998) (quoting *Cate v. State*, 644 N.E.2d 546, 547 (Ind. 1994); *see also Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir. 1996) (quoting *U.S. ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir. 1984)) (providing that "'[n]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather the evidence must indicate a present inability to assist counsel or understand the charges'"); *Galowski v. Berge*, 78 F.3d 1176, 1182 (7th Cir.1996); *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir.1995) (providing that "neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial"). Furthermore, the trial court, having had the opportunity to observe and interact with Hutchison during the evidentiary hearing, was in the best position to judge Hutchison's then-current mental state. *See Timmons v. State*, 500 N.E.2d 1212, 1217 (Ind. 1986) (providing that the trial court "can observe a defendant's demeanor,

including any uncooperative behavior, and determine defendant competent to stand trial").

[20] Hutchison acknowledged that he had been informed upon his release from DOC that he was not to be on school property. Nevertheless, less than one month after his release from DOC, Hutchison went onto school property on at least two separate occasions. Hutchison has presented no evidence which indicates that his mental condition prevented him from understanding or remembering that he was not supposed to be on school property. In fact, Hutchison's act of providing officers with a false name and telephone number suggests he understood that he was not supposed to be on school property.

[21] As is mentioned above, the trial court found that while Hutchison suffered from some mental issues, such issues did not "debilitate" Hutchison to the point that he did not know what he was doing. Tr. Vol. II, p. 60. The trial court's observations of Hutchison during the evidentiary hearing were an adequate basis for the trial court's determination that Hutchison was competent. *See Manuel v. State*, 535 N.E.2d 1159, 1162 (Ind. 1989) (providing that observations of the defendant's demeanor during hearings before the court are an adequate basis for finding that a competency evaluation is not necessary). Hutchison has failed to prove that the trial court committed fundamental error by failing to order a competency evaluation.

[22] The judgment of the trial court is affirmed.

May, J., and Barnes, J., concur.