## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 14 2020, 9:12 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone, IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Thomas J. Flynn
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeffrey D. Shanks,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 14, 2020

Court of Appeals Case No.
19A-CR-2173

Appeal from the Madison Circuit Court

The Honorable Andrew Hopper, Judge

Trial Court Cause No.
48C03-1812-F6-3166

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Jeffery Shanks (Shanks), appeals the trial court's revocation of his probation and the imposition of his previously-suspended sentence.

We affirm.

## ISSUE

Shanks presents this court with two issues on appeal, which we restate as a single issue: Whether the trial court abused its discretion by revoking a portion of his probation and the imposition of the previously-suspended sentence.

## FACTS AND PROCEDURAL HISTORY

On March 27, 2019, Shanks pled guilty to Level 6 felony unlawful possession of a syringe; Level 6 felony possession of methamphetamine; and Class B misdemeanor possession of marijuana. The trial court sentenced Shanks to concurrent two-year terms for each of his Level 6 felony convictions and to a one-year term for his Class B misdemeanor conviction. All of Shanks' sentence was suspended to probation.

The terms of Shanks' probation required him to abstain from the use of illegal drugs. Shanks was also required to submit urine samples for drug screens and pay his probation fees. On April 4, 2019, Shanks produced a urine sample which tested positive for THC and methamphetamine. On April 8, 2019, Shanks produced a diluted urine sample which was counted as a positive drug

screen. On April 16, 2019, Shanks produced a urine sample, which tested positive for THC and methamphetamine.

[6] On April 23, 2019, the Madison County Probation Department (Probation Department) filed a notice of probation violation, alleging that Shanks had failed three drug screens and had also failed to pay administrative and probation fees. On July 15, 2019, the trial court conducted an initial hearing where Shanks denied the allegations. On July 31, 2019, another initial hearing was held at which Shanks appeared to be under the influence of drugs, and he admitted to using "[m]ethamphetamine and [m]arijuana." (Appellant's App. Vol. II, p. 7). At the close of that hearing, Shanks was remanded to Madison County Jail.

[7] On August 1, 2019, the Probation Department filed an Amended Notice of Violation, adding that Shanks had committed two new offenses (possession of methamphetamine and marijuana). Since Shanks was in jail, he appeared via video, and denied the allegations. On August 7, 2019, Shanks was released from jail.

[8] On August 9, 2019, Shanks reported to the Community Justice Center (Center) to begin the Adult Day Reporting/Continuum of Sanctions program (ADR/COS). After the Center completed Shanks' intake, they required Shanks to submit a urine sample for screening. Shanks was incapable of producing a urine sample, and at around 8:00 p.m., Shanks was permitted to go to the hospital since he was "unable to urinate." (Appellant's App. Vol. II, p. 59).

Shanks was to return to the Center the following morning at 8:00 a.m. with "hospital paperwork" showing that he had received treatment. (Appellant's App. Vol. II, p. 59). Shanks failed to return to the Center as instructed; rather, he returned to the Center at 11:15 a.m. on August 12, 2019, with documentation that he had been seen at the St. Vincent emergency room for chronic back pain. On the same day, the Center asked Shanks to produce a urine sample for testing, but Shanks was incapable of producing one. On August 13, 2019, Shanks was terminated from the Center's ADR/COS program.

[9] On August 21, 2019, following a hearing as to the Probation Department's Amended Notice of Violation, the trial court determined that Shanks had failed to produce drug screens as directed, to report to his probation meetings, and to pay ADR/COS program fees. At the close of the hearing, the trial court revoked 120 days of Shanks probation and ordered him to serve the sentence in jail. Upon the completion of his probation sanction, Shanks was ordered to serve the balance of 522 days in the ADR/COS program. On October 19, 2019, Shanks was released from jail.

[10] Shanks now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[11] "'Probation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled.'" *Cain v. State*, 30 N.E.3d 728, 731 (Ind. Ct. App. 2015) (quoting *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007)), *trans.*

*denied.* "Courts in probation revocation hearings 'may consider any relevant evidence bearing some substantial indicia of reliability.'" *Id*. (quoting *Cox v. State*, 706 N.E.2d 547, 551 (Ind. 1999)). "It is within the discretion of the trial court to determine the conditions of a defendant's probation and to revoke probation if the conditions are violated." *Id*. Our court has said that "all probation requires 'strict compliance'" because once the trial court extends this grace and sets its terms and conditions, the probationer is expected to comply with them strictly." *Id*. at 731-32 (quoting *Woods v. State*, 892 N.E.2d 637, 641 (Ind. 2008)). "If the probationer fails to do so, then a violation has occurred." *Id*. We review a sanction imposed following revocation of probation for an abuse of discretion. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). "'An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances.'" *Hutchison v. State*, 82 N.E.3d 305, 310 (Ind. Ct. App. 2017) (quoting *Prewitt*, 878 N.E.2d at 188).

[12]     Probation revocation is a two-step process. First, the trial court must make a factual determination that a violation of a condition of probation occurred. *Heaton*, 984 N.E.2d at 616. Second, if a violation is found, then the trial court must determine the appropriate sanctions for the violation. *Id*. Shanks claims that the trial court's determination that he failed to submit drug screens was not supported by the evidence. Also, he challenges the propriety of the sanction imposed.

## A. *Probation Violation*

[13]     Shanks claims that he had a medical condition which prevented him from producing urine samples, thus, the trial court's determination that he had failed to submit to drug screens as directed by the Center is not supported by the evidence. After Shanks pleaded guilty to the underlying offenses in March 2019, his entire sentence was suspended to probation. The terms of his probation required him to produce urine samples for drug screens. Explaining why he was unable to urinate on demand, Shanks claimed that about four years ago, a catheter had to be inserted for about a week in order to treat a blockage that prevented him from urinating.

[14]     Turning to the record, on August 9, 2019, after the Center completed Shanks' intake, they required Shanks to submit a urine specimen for a drug screen. Shanks was unable to produce a urine sample, and he alleged he had a medical condition preventing him from doing so. Based on his assertion, Shanks was directed to go to the hospital. Shanks was to return the following morning at 8:00 a.m. with hospital paperwork indicating that he had received treatment that would enable him to produce a urine sample. Notwithstanding the fact that the hospital paperwork that he submitted to the Center showed that he had been treated for chronic back pain on August 10, 2019, the same medical records confirmed that Shanks was prescribed Flomax, which would have enabled him to urinate. On August 12, 2019, forty-eight hours after he had been prescribed Flomax, the Center asked Shanks to produce a urine specimen, but Shanks was incapable of producing one.

[15]    At the close of the revocation hearing, the trial court was unconvinced of Shanks' claim that a medical condition had prevented him from producing a urine sample for drug testing.  It noted,

> Sir, it's the [c]ourt's recollection at the last hearing . . . when you were taken into custody, you were sitting in the back of the courtroom passed out.  Someone had to shake you awake when your hearing was called.  The [c]ourt has difficulty believing that your refusal or inability to screen has something to do with a medical problem when that's the behavior you exhibit.  To participate in any of these [rehabilitative] programs, you have to be willing to abide by the rules.  You have to give a screen.  You can't refuse a screen.  You can't sit in the courtroom, passed out, and then saying [sic] the inability to give a screen.  That won't work.  So, you either need to be able to produce and be able to be safely monitored on the community corrections programs or you'll have to spend the entire sentence in the Madison County Jail.

(Transcript pp. 29-30).

[16]    A defendant serving a term of probation specifically agrees to accept conditions upon his or her behavior instead of imprisonment.  *Jones v. State*, 838 N.E.2d 1146, 1148 (Ind. Ct. App. 2005).  The conditions are designed to ensure that the probation serves as a period of genuine rehabilitation and that the public is not harmed by a probationer living within the community.  *Id*.  Since the terms of Shanks' probation included the mandate to produce urine samples for screening, it was incumbent upon Shanks to explain why he could not produce a urine sample.  Shanks offered the explanation that he had a problem in the past with urination, but that problem occurred four years prior.  In addition, it

appears that Shanks had no issues producing urine samples in April 2019, but his urination problems arose after he had failed three drug screens. Moreover, after Shanks was allegedly prescribed medication to treat his urination problem, he was still unable to produce a urine specimen. The trial court was well within its discretion to reject Shanks' excuses, and we find Shanks' argument is nothing more than a request to reweigh the evidence, which we will not do. Because the evidence was sufficient to show that Shanks violated the terms of his probation by failing to produce a urine sample for drug testing, we conclude that the trial court's Order, revoking a portion of Shanks' probation is supported by the evidence.

## B. *Sanction*

[17]     Shanks also argues that the trial court abused its discretion in ordering him to serve a portion of his suspended sentence in jail as a sanction for his probation violations. The State responds by arguing that the issue is moot because Shanks has already served the sanction—*i.e.,* 120 days in jail. We agree.

> [W]here the principal questions at issue cease to be of real controversy between the parties, the errors assigned become moot questions and this court will not retain jurisdiction to decide them. Stated differently, when we are unable to provide effective relief upon an issue, the issue is deemed moot, and we will not reverse the trial court's determination where absolutely no change in the *status quo* will result.

*Jones v. State*, 847 N.E.2d 190, 200 (Ind. Ct. App. 2006) (internal citations and quotations omitted), *trans. denied*. After the trial court determined that Shanks

had violated his probation, the trial court sanctioned Shanks by sentencing him to serve 120 days in Madison County Jail. Shanks served his sentence and was released in October 2019. Because Shanks has already served his sentence, we decline to address the propriety of the sanction imposed. *See Richardson v. State*, 402 N.E.2d 1012, 1013 (Ind. Ct. App. 1980) (holding that this court does not "engage in discussions of moot questions or render advisory opinions").

# CONCLUSION

[18] In sum, we conclude that the trial court properly revoked a portion of Shanks' probation and the issue regarding the propriety of the sanction imposed is moot.

[19] Affirmed.

[20] Baker, J. and Brown, J. concur