No. 120,179

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RODRIGO FRANCISCO GONZALEZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

The essential principle embodied in the Due Process Clause of the Fourteenth Amendment to the United States Constitution is this: The government may not deprive a person of a property right or a liberty interest without affording that person the opportunity to be heard in a meaningful way and at a meaningful time to avert a wrongful deprivation of that right or interest.

2.

Constitutional due process is an especially elastic concept in that the protections required vary depending upon the importance of the specific property right or liberty interest at stake.

3.

The State may not revoke the probation of a convicted felon who is not mentally competent at the time of the revocation hearing.

1

4.

Competency for due process purposes entails the capacity to understand the nature and object of the proceedings, to consult with a lawyer, and to assist in presenting a defense.

5.

A district court has the inherent authority to order a competency evaluation as a means of extending constitutional due process to a probationer facing revocation.

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed December 27, 2019. Remanded with directions.

*Hope Faflick Reynolds* and *Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., PIERRON and ATCHESON, JJ.

ATCHESON, J.: Constitutional due process protections preclude district courts from revoking the probation of convicted felons who have become mentally incompetent and ordering they serve their underlying sentences of imprisonment. The deprivation of liberty inflicted on those probationers is sufficiently grave that they must be able to understand and meaningfully participate in the revocation proceedings. The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires nothing less.

The Sedgwick County District Court may have given Rodrigo Gonzalez considerably less when it revoked his probation and sent him to prison despite legitimate

concerns he may not have been competent during the revocation hearing. The district court refused to order a competency evaluation for Gonzalez because the statutory processes for those evaluations do not explicitly apply to probation revocation proceedings. But the absence of a statutory device cannot negate a fundamental constitutional right. The district court, therefore, erred in revoking Gonzalez' probation without determining he was mentally competent. The error, however, would be harmless if Gonzalez were competent then. We, therefore, remand the case for further proceedings, including either a retrospective or present competency evaluation.

FACTUAL AND PROCEDURAL HISTORY

We outline some background facts and procedural history to put this appeal in context. The State charged Gonzalez with felony battery of a law enforcement officer in April 2017 because he refused to remove his shoes while he was being booked into the Sedgwick County jail and then elbowed a corrections officer attempting to move him to a "safety cell" until he complied. The record indicates Gonzalez was 37 years old and had numerous convictions for misdemeanors and traffic offenses in Dodge City, Arkansas City, and Wichita over the course of his adult life. He also had a felony conviction for battery of a law enforcement officer.

Early in the case, the lawyer appointed to represent Gonzalez requested an evaluation to determine if he was mentally competent to stand trial. As provided in K.S.A. 22-3202, the district court ordered an evaluation and duly received a report from the mental health professional who examined Gonzalez. Following a hearing in June 2017, the district court entered an order finding Gonzalez to be competent. Neither the report nor a transcript of that hearing is part of the record on appeal.

The State and Gonzalez' lawyer reached an agreement calling for Gonzalez to plead guilty with a sentencing recommendation to the district court for a dispositional

3

departure to probation. The written plea agreement acknowledged Gonzalez' history of mental illness and a related, though unidentified, seizure disorder as factors that contributed to and mitigated his wrongful conduct in the jail. The agreement also recognized the availability of appropriate health care in the community as a ground for the recommended sentence.

At a hearing in January 2018, the district court accepted Gonzalez' guilty plea. The district court later sentenced Gonzalez to 52 months in prison and, consistent with the parties' agreement, granted the motion for a dispositional departure to probation for 36 months.

In late July, the district court issued a warrant for Gonzalez because he had tested positive for alcohol several times, violating the terms of his probation. Gonzalez was taken into custody on the warrant, and the district court appointed a lawyer to represent him at a probation revocation hearing.

At the hearing about a month later, the lawyer informed the district court that Gonzalez had refused to meet with her in the jail several days earlier. The lawyer indicated she was having difficulty communicating with Gonzalez just before the hearing. The district court asked Gonzalez directly if he understood what was going on. He responded:

> "This is the first time I have been on this case. I don't know what you are trying to tell me. I am just hearing you, but I am not paying attention about it, sir. That's all. I don't know.
> "If I have to challenge it, I will challenge it. This is the first time I have ever done this."

Gonzalez' response may be fairly characterized at the very least as diffuse and perhaps as disordered. It was not, however, patently irrational or illustrative of a complete break

4

with reality. The district court took a brief recess so Gonzalez and his lawyer could confer.

When the hearing reconvened, the district court established that the problem was not a language barrier. Gonzalez' lawyer explained that Gonzalez did not seem to appreciate what was going on. And, as a result, the lawyer questioned whether Gonzalez was mentally competent. She told the district court that were this the beginning of a criminal case rather than a probation revocation hearing, she would likely ask for a competency evaluation.

The district court suggested that Gonzalez had to be mentally competent to go forward with the hearing. His lawyer agreed. The prosecutor objected and submitted that no statutory authority permitted a stay for a competency hearing after a defendant had been adjudged guilty. The district court postponed the revocation hearing for several days to allow the lawyers to look into how the matter should be handled. The district court held a short hearing five days later and simply set the probation revocation for an evidentiary hearing the following week. The lawyers did not bring up Gonzalez' competency, and the district court did not address it.

At the start of the evidentiary hearing, Gonzalez' lawyer again raised concerns about his mental competency and pointed out that he had not been evaluated. The district court responded that it had been "informed" there were no procedures for competency evaluations after a defendant's conviction. So the district court concluded "unless that has changed, the matter [of Gonzalez' competency] will remain unresolved."

The State then presented three witnesses and two exhibits to prove the alleged probation violations. Gonzalez' lawyer cross-examined those witnesses but offered no additional evidence. Gonzalez did not testify. Based on the evidence, the district court found that Gonzalez had consumed alcohol multiple times in violation of the conditions

5

of probation. In considering what disposition to make, the district court mentioned both Gonzalez' rather lengthy list of criminal convictions and his mental health issues. On balance, the district court concluded Gonzalez was not amenable to continued probation and ordered that he serve his 52-month prison sentence. Gonzalez has appealed that ruling.

LEGAL ANALYSIS

For his only issue on appeal, Gonzalez asserts he had a constitutionally protected due process right to be mentally competent at his probation revocation hearing. We agree. In turn, Gonzalez says the appropriate remedy requires the revocation order be set aside and he be given a new hearing. As we explain, that may not be the best tailored remedy. But, with some qualification, it provides an acceptable alternative.

At the outset, we put to rest the State's argument on appeal that Gonzalez didn't preserve his constitutional claim in the district court and should not be permitted to raise it now. Gonzalez' lawyer twice questioned Gonzalez' mental competence and requested relief from the district court. The record in the district court lent support to the lawyer's concern—the circumstances of the underlying crime were suggestive of some degree of mental decompensation and the explicit terms of the plea agreement acknowledged Gonzalez' chronic mental health issues.

Although the lawyer did not cite any particular legal source—constitutional or otherwise—for Gonzalez' right to be sufficiently mentally engaged to participate meaningfully in the hearing, she did assert that right. The district court acknowledged the issue and recognized a potential problem without an apparent solution. The lawyer's failure to mention the words "constitutional" or "due process" in her discussion with the district court does not amount to a waiver or forfeiture of Gonzalez' Fourteenth Amendment rights. See *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed.

6

2d 274 (1969) (waiver of constitutional right must be intelligently and understandingly made and will not be inferred); *State v. Bunyard*, 307 Kan. 463, 470, 410 P.3d 902 (2018) (court will not presume defendant's acquiescence in loss of fundamental right). We, therefore, may consider the issue.

*The Right Considered*

The essential principle embodied in the Due Process Clause is this: The government may not deprive a person of a property right or a liberty interest without affording that person the opportunity to be heard in a meaningful way and at a meaningful time to avert a wrongful deprivation of that right or interest. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."); *Taylor v. Kansas Dept. of Health & Environment*, 49 Kan. App. 2d 233, Syl. ¶ 4, 305 P.3d 729 (2013). Constitutional due process is an especially elastic concept in that the protections required vary depending upon the importance of the specific property right or liberty interest at stake. Not surprisingly, those government actions aimed at involuntarily confining a person—an especially stringent deprivation of liberty—call for exacting due process protections. See *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by one's own government."); *Foucha v. Louisiana*, 504 U.S. 71, 78-80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992) (government effort to involuntarily commit individual because of mental illness implicates substantive liberty rights and triggers procedural due process protections).

7

Probationers facing revocation and imprisonment on felony convictions indisputably have a liberty interest triggering constitutional due process protections. *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973); *State v. Hall*, 287 Kan. 139, 143, 195 P.3d 220 (2008). Because they already have been convicted of crimes and confront the loss of a sentencing disposition that spared them incarceration, probationers are not entitled to the same due process protections as defendants with impending trials to determine their guilt or innocence. 411 U.S. at 781. The *Gagnon* Court drew heavily from *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), in which it considered the due process requirements for resolving disputed parole violations. In *Gagnon*, the Court identified the constitutionally necessary components of due process in a probation revocation proceeding, borrowing directly from *Morrissey*:  (1) written notice of the alleged violations prompting the government's request to revoke; (2) disclosure of the evidence upon which the government will rely; (3) the right to be heard in person and to present witnesses and other evidence to refute the grounds for revocation; (4) the opportunity to confront and cross-examine adverse witnesses absent "good cause" to limit or suspend that examination; (5) a neutral hearing officer and decisionmaker; and (6) a written statement from the fact-finder as to the evidence relied upon and the reasons for revoking probation. 411 U.S. at 786.

Conspicuously missing from the list is a mandatory right to legal representation. In *Morrissey*, the Court declined to address whether parolees had a right to legal representation at revocation hearings. 408 U.S. at 489. In *Gagnon*, the Court concluded that the circumstances of a given case would dictate whether a probationer had a due process right to appear at a revocation hearing with a lawyer. The Court suggested probationers would presumptively be entitled to legal representation if they offered either "colorable claim[s]" the factual grounds for the revocation were wrong or compelling mitigating circumstances weighing against revocation notwithstanding proved violations, especially if those circumstances could be considered "complex or

8

otherwise difficult to develop." And the Court invited the adjudicating authority to take into account the ability of a given probationer to effectively speak on his or her own behalf, particularly in a "doubtful" case. 411 U.S. at 790-91.

Extracted from the rarified confines of its origin, the case-by-case approach to legal representation seems impractical. The risk of error in refusing to allow a given probationer to appear with a lawyer would be exceedingly difficult to predict, depending largely on an after-the-fact judgment of a reviewing court. The Kansas Legislature has effectively eliminated that uncertainty by statutorily permitting probationers to appear with counsel at revocation hearings and requiring district courts to appoint lawyers for indigent probationers. K.S.A. 2018 Supp. 22-3716(b)(2).

Probation revocations are not considered a critical stage in a criminal prosecution, since the probationer has already been convicted and sentenced. See *Gagnon*, 411 U.S. at 781-82. That difference bears on the source and scope of the attendant constitutional protections. The protections afforded probationers in *Gagnon* are judicially identified components of a constitutional due process right and are geared to the particular liberty interests at stake. So they haven't the same constitutional anchor as express, though similar, protections guaranteed accused persons facing criminal prosecution, such as the Sixth Amendment rights to be informed of the charges and to confront the government's witnesses. Other express constitutional rights accorded criminal defendants have no counterparts in the process due probationers under the Fourteenth Amendment, perhaps most notably trial by jury.[1]

[1]There is a fair argument that constitutional due process requires that Kansas probationers be permitted legal representation at revocation hearings. The revocation procedure entails a hearing in the district court where a county or district attorney represents the State and the rules of evidence generally apply. See K.S.A. 60-402 (rules of evidence govern civil and criminal proceedings, unless specifically relaxed by rule or statute); K.S.A. 22-3716(b)(2) (sworn written statements expressly made admissible in probation revocation hearings). In *Gagnon*, the Court envisioned a far less formal

9

hearing when it outlined the process constitutionally due a probationer, suggesting typically an administrative officer without formal legal training would present the factual circumstances on behalf of the State to a nonjudicial decisionmaker unhampered by strict evidentiary rules. 411 U.S. at 789. Whether one model or the other better promotes fairness or advances identifiable penological goals, a probationer without legal representation generally would be significantly disadvantaged squaring off against a trained lawyer in the more formal hearings mandated in Kansas.

Against that backdrop, the question remains whether the State may revoke the probation of a convicted felon who is not mentally competent at the time of the revocation hearing. Neither the United States Supreme Court nor the Kansas Supreme Court has addressed the issue. Competency for due process purposes entails "the capacity to understand the nature and object of the proceedings," to consult with a lawyer, and to assist in presenting a defense. *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *State v. Woods*, 301 Kan. 852, 857-58, 348 P.3d 583 (2015). Although the definition of competency has been enunciated in criminal cases, it is not exclusive to those proceedings. See *In re Care & Treatment of Sykes*, 303 Kan. 820, Syl. ¶ 3, 367 P.3d 1244 (2016) (recognizing due process definition of competency but finding respondent in sexually violent predator commitment proceeding need not be competent). Given the liberty interest at stake in a revocation hearing, the near ineluctable answer to the question we have posed must be in the negative.

Assuming a probationer has no constitutional due process right to a lawyer in a given hearing, he or she would bear the burden of representing himself or herself. By definition, an incompetent probationer could not do so. To state the obvious, someone who doesn't understand what's going on can't very well participate in any meaningful way. The statutory right to a lawyer is largely beside the point in assessing the constitutional due process protections that must be extended to probationers facing revocation. Constitutional rights set a floor that a state may exceed but cannot sink below. See *State v. Cheever*, 306 Kan. 760, 781, 402 P.3d 1126 (2017). Moreover, as we

10

discuss momentarily, legal representation is not really an adequate due process substitute for competency in this context.

The right to a lawyer, whether afforded as a matter of constitutional or statutory mandate, entails the concomitant right to effective representation by that lawyer. *State v. Galaviz*, 296 Kan. 168, 176, 291 P.3d 62 (2012). No matter how sharp a lawyer's litigation skills, he or she can seldom fashion an effective case for the client without a thorough grounding in the facts. And oftentimes a client will be a critical source of information in constructing a narrative of the relevant events, identifying knowledgeable witnesses, and gathering other evidence. During an evidentiary hearing, the client can point out possible errors in witness testimony and may provide his or her own (sometimes) persuasive testimony. To again state the obvious, an incompetent client can do none of those things. See *Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S. Ct. 1373, 134 L. Ed. 2d 498 (1996) (recognizing interdependence of effective legal representation and mental competence of defendant in criminal prosecution); *Donald v. State*, 930 N.E.2d 76, 80 (Ind. Ct. App. 2010) ("Without competency, the minimal due process rights guaranteed to probationers at probation revocation hearings would be rendered useless."). So a lawyer representing an incompetent client in a probation revocation will be hamstrung in disputing the State's evidence and marshalling any sort of contrary defense case.

With probationers like Gonzalez—who faced a 52-month term of imprisonment upon revocation—the liberty interest at stake is sufficiently valuable and the risk of error sufficiently grave that due process requires they be competent. We stand alongside many other courts in that conclusion.[2]

[2]Decisions recognizing a probationer or parolee must be competent during revocation proceedings include: *Hayes v. State*, 343 So. 2d 672, 672 (Fla. Dist. Ct. App. 1977); *Donald*, 930 N.E.2d at 80; *People v. Martin*, 61 Mich. App. 102, 108, 232 N.W.2d 191 (1975); *State v. Qualls*, 50 Ohio App. 3d 56, 58, 552 N.E.2d 957 (1988);

11

*Commonwealth v. Megella*, 268 Pa. Super. 316, 321, 408 A.2d 483 (1979); *Thompson v. State*, 654 S.W.2d 26, 28 (Tex. App. 1983); *State ex rel. Vanderbeke v. Endicott*, 210 Wis. 2d 502, 516, 563 N.W.2d 883 (1997). The list is illustrative rather than exhaustive. The parties have cited no directly contrary authority, and we have found none.

*The Remedy Considered*

As we have outlined, the district court declined to order an evaluation to determine if Gonzalez was competent before conducting the evidentiary hearing and revoking his probation. There were legitimate reasons to believe Gonzalez may not have been competent, as the district court acknowledged. The district court, therefore, erred. Because Gonzalez was not evaluated and the record does not obviously establish that he was, in fact, incompetent leading up to and during the revocation hearing, we cannot determine if the error caused any legal prejudice. Were Gonzalez competent at the time, he would not have been deprived of the constitutional process he was due.

We, therefore, tailor our remedy to that possibility. On remand, the district court should determine if a retrospective competency evaluation can be done. That is, an evaluation aimed at determining if Gonzalez was competent in late August and early September 2018, when the revocation proceedings took place. See *State v. Ford*, 302 Kan. 455, Syl. ¶ 8, 353 P.3d 1143 (2015) (recognizing retrospective competency evaluation as appropriate remedial tool). The feasibility of a retrospective evaluation depends on the overall circumstances and the lapse of time. Such an evaluation would require an opinion from a qualified expert witness based on reliable lay accounts of the subject's mental capacity at the relevant time, any elucidating medical or psychological examinations of the subject, the expert's own observation and assessment of the subject, and any other illuminative information. As suggested in *Ford*, a retrospective evaluation is an accommodation to the State, since the alternative typically would require setting aside the result of the challenged proceeding. 302 Kan. at 471-72. The State may waive the opportunity.

If the State agrees to forgo a retrospective competency evaluation of Gonzalez or the district court determines such an evaluation is not feasible, then the district court must set aside the probation revocation. The district court may proceed with a new revocation hearing should Gonzalez be competent. But the district court may not do so if Gonzalez plainly appears to be incompetent or if it entertains genuine concerns about his competence based on its observations or the factually grounded representations of his lawyer or the prosecutor. As a matter of constitutional due process, the district court then ought to order a competency evaluation.

As our discussion implies, we readily conclude a district court has the inherent authority to order a competency evaluation as a means of extending constitutional due process to a probationer facing revocation. See *State v. Gagne*, 129 N.H. 93, 97, 523 A.2d 76 (1986) ("[I]n the exercise of its inherent authority to protect a defendant's constitutional rights, a district court may order competency evaluations."); *State v. Bellardino*, 428 S.C. 247, 834 S.E.2d 457, 459 (2019) (Although not mentioned in the statute authorizing competency evaluations, a municipal or summary court has the inherent authority to order such an evaluation of a defendant charged with an offense punishable by a fine of up to $100 or up to 30 days in jail.); *State v. Sisouvanh*, 175 Wash. 2d 607, 621, 290 P.3d 942 (2012); cf. *Donald*, 930 N.E.2d at 80 (Without invoking inherent judicial authority specifically, the appellate court held that constitutional due process permits a probationer facing revocation to be evaluated for mental competence notwithstanding the absence of any statutory authority for an evaluation.). As the district court recognized, Kansas has no statutory procedure for competency evaluations in criminal cases after defendants have been sentenced. See K.S.A. 22-3302(1). But that void cannot be a barrier to effectuating a constitutional right.

On remand, the district court may look at the approach outlined in K.S.A. 22-3301 et seq. as a general template for insuring Gonzalez' due process right to be competent at any probation revocation hearing. In other words, those statutes provide one design for handling mental competency determinations for probationers, but they are not necessarily the conclusive measure of constitutional due process.

If, on remand, the district court ultimately directs that Gonzalez undergo an evaluation to determine his present competency and the evaluation shows him to be competent, the district court may then conduct a new revocation hearing.

In their briefs, neither the State nor Gonzalez addresses what ought to happen if he is not mentally competent. And the issue in some strict sense is not before us, since we have no way of knowing what Gonzalez' mental status may be months from now. But the circumstance represents a very real possibility bound up with the legal question we are required to answer. We, therefore, perceive an obligation to offer at least a suggestion on an appropriate course.

So, do the district courts have the authority to order Gonzalez or someone similarly situated restored to mental competence in advance of a probation revocation hearing even if restoration required his involuntary commitment to a mental health facility for some period? We suppose they do. Gonzalez has a significant liberty interest at stake—upon revocation, he has to serve 52 months in prison. The restrictions on his liberty in prison are manifestly greater than those he would experience on probation. As we have found, the Due Process Clause requires him to be competent when the State seeks to revoke his probation. There are, then, two logical dispositions: The district court can either order reasonable steps to restore a probationer's mental competence or preclude the State from moving forward with the revocation, in effect creating a defense of incapacity.

14

There are competing interests of substantial weight to be considered. The probationer has a due process right to participate meaningfully in the process. Balanced against that right, the State has an obligation to punish wrongdoers. Concomitantly, the State can request a convicted defendant's probation be revoked if he or she violates the terms of that conditional release in serious ways warranting imprisonment on the underlying sentence. See K.S.A. 2018 Supp. 22-3716(c). The balancing suggests a district court may order reasonable steps to restore a mentally incompetent probationer to competency—a result that substantially impairs neither interest and tends to foster both. Those steps may include carefully measured and monitored inpatient treatment. By comparison, precluding revocation based on incapacity stymies the State's legitimate interest and doesn't necessarily advance a probationer's long term objective of completing his or her sentence.

We have discovered a striking dearth of law addressing how trial courts should deal with incompetent probationers facing revocation proceedings. The United States Supreme Court, however, has held that a state may involuntarily commit a person charged with a felony but incompetent to stand trial to an appropriate facility for a reasonable time in an effort to render that person competent. *Jackson v. Indiana*, 406 U.S. 715, 738, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972). And under certain circumstances, incompetent persons charged with serious crimes may be detained and involuntarily administered psychotropic drugs to restore their competency. *Sell v. United States*, 539 U.S. 166, 180-81, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003). Those conditions, then, comport with an accused criminal's constitutional rights. By the same token, the accused cannot be confined indefinitely when the cause of his or her incompetence is not amenable to treatment or a course of treatment has failed to show material progress in restoring competence. In short, a criminal defendant incompetent to stand trial "cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he [or she] will attain that capacity in the foreseeable future." *Jackson*, 406 U.S. at 738.

15

Those cases are significant here because they fix due process safeguards for persons accused of serious crimes. As we have noted, the criminally accused command greater constitutional protections than the convicted, including probationers. So in the realm of assessing mental competence and ordering restorative treatment, we have no reason to infer convicted felons on probation would have a stronger constitutional shield against involuntary commitment than the accused in *Jackson* and *Sell*.[3]

[3]The defendant in *Jackson* had been charged with two counts of robbery. 406 U.S. at 717. The defendant in *Sell* faced a slew of felony charges for mail fraud and Medicaid fraud the Court characterized as "serious, but nonviolent, crimes." 539 U.S. at 169-70. Neither opinion suggests that its reasoning or holding would necessarily apply to persons charged with misdemeanors. Gonzalez had been convicted of a crime that generically could be considered both serious and a violent felony, although the specific factual circumstances tend to soften those characterizations.

A district court could, therefore, presumably order the involuntary commitment of an incompetent probationer facing revocation for a reasonable time to receive treatment designed to render him or her competent. We suppose the time frames in K.S.A. 2018 Supp. 22-3303—90 days for an appropriate mental health professional to assess and report to the district court whether the person "has a substantial probability of attaining competency" and, if so, for up to six months (including that 90-day period) to become competent—may serve as a benchmark of constitutional reasonableness.

*A Reservation Noted*

This case does not present and we do not consider in any fashion the due process implications of intermediate sanctions for a probation violation. Under K.S.A. 2018 Supp. 22-3716(c)(1)(B), a district court may confine a probationer in jail for two or three days as punishment for a probation violation. And the district court may impose those short stays for up to a total of 18 days without revoking probation. Likewise, a district

16

court may impose a sanction of up to 60 days in jail for a probation violation—a more severe punishment but something well short of revocation. K.S.A. 2018 Supp. 22-3716(c)(11).

We have reservations about how a probationer's due process right to be competent at a *revocation* hearing intersects with those lesser sanctions, particularly a two- or three-day jail stay. There is a certain incongruence in suggesting incompetent probationers can be or should be involuntarily committed for months of treatment to render them competent for a hearing to determine whether they should spend a few days (or even 60 days) in jail as punishment for violating a condition of their probation. We posed that incongruity to the lawyers during oral argument and did not have our concerns allayed. This constitutional conundrum, however, invites no immediately obvious solution—that's what makes it a conundrum, after all—so we held no real expectation that the jurisprudential fog might lift during oral argument.

We mention the intermediate statutory sanctions only to say that we have taken cognizance of them in outlining the positive due process protections we have identified for Gonzalez and other probationers in comparable circumstances and to point out that we do not mean for our outline to be applied to those sanctions. The due process required for the imposition of statutory sanctions short of revocation presents a distinct constitutional question calling for a distinct and fully developed constitutional answer.

Remanded to the district court for further proceedings.

17