IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

AMMAROO JOHNSON, *Petitioner*,

*v.*

THE HONORABLE ROGER HARTSELL, Judge *Pro Tempore* of the
SUPERIOR COURT OF THE STATE OF ARIZONA, in and for the County
of Maricopa, *Respondent Judge*,

THE STATE OF ARIZONA,
*Real Party in Interest.*

No. 1 CA-SA 22-0189
FILED 2-21-2023

---

Petition for Special Action from the Superior Court in Maricopa County
No. CR2017-123242-001

The Honorable Roger L. Hartsell, Judge *Pro Tempore* (Retired)
The Honorable Kerstin LeMaire, Judge

**REVIEW GRANTED; RELIEF DENIED**

---

COUNSEL

Maricopa County Office of the Public Defender, Phoenix
By Kevin Brady
*Counsel for Petitioner*

Maricopa County Attorney's Office, Phoenix
By Douglas Gerlach and Juli Warzynski (argued)
*Counsel for Real Party in Interest*

---

**OPINION**

Judge Paul J. McMurdie delivered the Court's opinion, in which Presiding Judge Brian Y. Furuya and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

¶1        Petitioner Ammaroo Johnson[1] seeks special action relief from the superior court's denial of his motion to dismiss a probation revocation petition. We accepted jurisdiction. We hold that when filing a probation revocation petition against a probationer who was previously found to be incompetent and not restorable, the probation officer or the State must allege either a new probation violation or facts that show a reasonable belief the probationer has regained competency. Because Johnson admits the instant probation revocation petition alleged a new probation violation, the superior court did not err by denying his petition to dismiss. Thus, we deny relief.

## FACTS AND PROCEDURAL BACKGROUND

¶2        The State charged Johnson with counts of indecent exposure and criminal trespass in May 2017. Following a no-contest plea, the court sentenced Johnson to one year in prison and placed him on three years of supervised probation upon release. Later, Johnson violated the probation terms, and the court extended the probation until September 2023.

¶3        In February 2021, the State charged Johnson with assault and sexual exploitation of a minor. Johnson's probation officer petitioned to revoke Johnson's probation due to the new charges and because he

---

[1]        Johnson also goes by the names: Rudy Laverne Johnson, Ammaroo Level Johnson, Johnson Ammaroo, David R. Ammaroo, Rudy Leverne Johnson, Ammardo L. Johnson, Annaroo Moore, Johnoan Amarro, Marro L. Moore, Ammaroo Lavelle Johnson, Amaru Moore, Ammaroo Leville Johnson, Ammardo Johnson, Ammaroo Moore, Ammarro Johnson, Ammarro Levelle Johnson, Johnson Amarro, Ammardo Level Johnson, Rudy Johnson, Ammaroo Rudy Johnson, Ammaroo L. Johnson, and Anmaroo L. Johnson.

absconded and failed to "participate and cooperate" in mental health screenings and treatment as required by the probation conditions.

¶4        The defense moved for an examination of Johnson's mental health under Arizona Rule of Criminal Procedure 11, which the superior court granted. After the Rule 11 proceedings, the court found Johnson was "criminally incompetent" and would likely not be "restored to competency within 15 months." *See* Ariz. R. Crim. P. 11.5(b)(2). The court, however, ordered Johnson to participate in the county's restoration treatment program, ordered confinement, and recommended involuntary treatment.

¶5        In January 2022, about four months into the restoration program, the superior court held a hearing to reassess Johnson's competency. The court again found him "criminally incompetent." The court also found "no substantial probability that [Johnson would] be restored to competency within 21 months after the date of the original finding of incompetency."[2] The court found reasonable cause to believe that Johnson was a danger to himself or others, or disabled, and that he would likely suffer or inflict serious harm. The court ordered the County Attorney to petition for a court-ordered evaluation for Johnson under Title 36. The court ordered the Sheriff to transport Johnson for an inpatient evaluation. Finally, the court dismissed Johnson's pending criminal charges and the probation revocation petition without prejudice.

¶6        Later in January 2022, the superior court held a hearing on a petition for court-ordered treatment. The court found Johnson was "persistently or acutely disabled," "suffering from a mental disorder," and "unwilling or unable to accept voluntary treatment." As a result, the court ordered Johnson to undergo combined inpatient and outpatient treatment not to exceed 365 days.

¶7        The same morning that the court released Johnson from the behavioral health center, an officer re-arrested Johnson without a warrant based on a request from the County Attorney's Office. Shortly after, the State recharged Johnson with assault and luring a minor for sexual exploitation for his alleged actions in February 2021. Johnson's probation

---

[2]        Although a finding of "no substantial probability of restoration" refers to the conditions present at the time of the evaluation and is subject to change, we use the term "not restorable" for brevity.

officer also re-petitioned to revoke probation based on the refiled criminal charges and other non-compliance with the probation conditions.

¶8 The defense moved to dismiss the charges and probation revocation petition, arguing that the State failed to provide evidence that Johnson was "restored to competency." The superior court found "the prior adjudication of incompetency create[d] a rebuttable presumption of continued incompetency that require[d] a meaningful showing that [Johnson was] no longer incompetent." Finding "zero indication that [Johnson] gained competency," the court granted the motion "without prejudice and dismiss[ed]" the charges and probation revocation petition related to the charges. The State appealed the superior court's order.[3]

¶9 Johnson's probation officer petitioned to revoke Johnson's probation for a third time in May 2022. The petition asserted Johnson committed assault and luring a minor for sexual exploitation, contacted a child "[w]ithout . . . prior written approval," absconded, and "did not actively participate and cooperate" in mental health treatment.

¶10 On June 1, the superior court granted Johnson's treatment administrator's request to order Johnson for inpatient treatment so that he could be psychiatrically stabilized. But at oral argument before this court, both parties conceded that Johnson was never taken into custody based on the treatment order. Instead, on June 12, an officer arrested Johnson based on a probation revocation warrant.

¶11 The defense moved to dismiss the probation revocation petition, arguing "Johnson remain[ed] incompetent and no evidence [had] been presented to establish otherwise." The superior court denied the motion to dismiss, citing *Rider v. Garcia*, 233 Ariz. 314 (App. 2013). Johnson remained in custody based on the probation revocation petition.

¶12 Johnson petitioned for special action relief challenging the superior court's denial of the motion to dismiss the probation revocation petition. Both parties asked that we accept jurisdiction and resolve the issues raised in an opinion. We accepted jurisdiction of the petition because

---

[3] At the State's request, we consolidated its appeal with Johnson's special action petition and ordered the State to file a brief. When the State failed to file a brief as ordered, we dismissed its appeal. *See* Ariz. R. Crim. P. 31.13(a)(1) ("If an appellant does not timely file an opening brief, the appellate court may dismiss the appeal.").

the denial of the motion to dismiss is not appealable, *see Nowell v. Rees*, 219 Ariz. 399, 403, ¶ 10 (App. 2008), and the legal issues presented are novel and of statewide significance, *see Levinson v. Jarrett*, 207 Ariz. 472, 474, ¶ 4 (App. 2004).

## DISCUSSION

**¶13**　　　The parties disagree on whether the probation officer must allege, and the State prove, that Johnson regained competency before re-petitioning for probation revocation and issuing an arrest warrant on the petition. In the dismissed appeal, the State challenged the superior court's order granting Johnson's first motion to dismiss. In the petition for special action, Johnson maintains that the superior court erred by denying the second motion to dismiss. The probation revocation petition lacked facts conveying a reasonable belief that Johnson has regained competency.

**¶14**　　　"We review a motion to dismiss a criminal prosecution for an abuse of discretion." *Nowell*, 219 Ariz. at 403, ¶ 11. The "court abuses its discretion when it misapplies the law or predicates its decision on incorrect legal principles." *Id.* (quoting *Taylor v. Cruikshank*, 214 Ariz. 40, 43, ¶ 10 (App. 2006)). We review interpretations of rules and statutes, as well as constitutional issues, *de novo. Id.*; *State v. Moody*, 208 Ariz. 424, 445, ¶ 62 (2004).

## A.　The State and Probation Officers Must Follow the Appropriate Procedures for Refiling Criminal Charges or Re-Petitioning for Probation Revocation.

**¶15**　　　Both parties assert that the standards for refiling criminal charges and re-petitioning to revoke probation are the same for a defendant found incompetent and not restorable. Thus, even though we dismissed the State's appeal, we address the framework for refiling charges and re-petitioning to revoke probation.

### 1.　Certain Procedures Are Necessary to Start a Criminal or Probation Revocation Proceeding After a Court Has Dismissed It Based on an Incompetency Finding.

**¶16**　　　"It is well established that [due process] prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California*, 505 U.S. 437, 439 (1992) (citing *Drope v. Missouri*, 420 U.S. 162 (1975); *Pate v. Robinson*, 383 U.S. 375 (1966)). This "prohibition is fundamental to an adversary system of justice" because mentally incompetent persons cannot defend themselves. *Drope,* 420 U.S. at 171–72.

Moreover, failing to "observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent" violates due process. *Id.* at 172 (citing *Pate*, 383 U.S. at 385).

**¶17**        A defendant is "[i]ncompetent to stand trial" if "as a result of a mental illness, defect or disability [the] defendant is unable to understand the nature and object of the proceeding or to assist in the defendant's defense." A.R.S. § 13-4501(2); *see also* Ariz. R. Crim. P. 11.1. A court cannot try, convict, sentence, or punish an incompetent person. A.R.S. § 13-4502(A).

**¶18**        Courts must observe procedural protections to protect incompetent defendants. *See Drope*, 420 U.S. at 172; *see also Godinez v. Moran*, 509 U.S. 389, 396 (1993). After the State criminally charges a defendant, either party or the court can request that the defendant's competency to stand trial be evaluated. A.R.S. § 13-4503(A); Ariz. R. Crim. P. 11.2(a). If "reasonable grounds exist for a competency examination," the court must appoint "mental health experts to examine the defendant." A.R.S. § 13-4505(A); *see also* Ariz. R. Crim. P. 11.3(a). The court must then determine whether the defendant is competent to stand trial. A.R.S. § 13-4510(A). If the court finds the defendant is incompetent and not restorable, the court can order an evaluation for civil commitment, appoint a guardian *ad litem*, or dismiss the defendant's charges without prejudice. A.R.S. § 13-4517(A); Ariz. R. Crim. P. 11.5(3)(A).[4]

**¶19**        "[A] prior adjudication of mental incompetency gives rise to a presumption of continued incompetency." *State v. Hehman*, 110 Ariz. 459, 460 (1974). If new evidence suggests the defendant has become competent, the court must "hold an additional hearing to determine the defendant's

---

[4]     Although not applicable here, starting in 2024, if the defendant is charged with a serious offense, the court may determine whether the defendant should be involuntarily committed. *See* S.B. 1310, 55th Leg., 2d Reg. Sess. (2022) (A.R.S. § 13-4517(A)(4) (effective Jan. 1, 2024)). If the defendant is found dangerous and needing involuntary commitment, the court must dismiss the charges without prejudice and order commitment until the court either finds the defendant is competent or no longer dangerous. *See id.* (A.R.S. § 13-4521(F), (G) (effective Jan. 1, 2024)). While committed, the treating provider must twice a year examine the defendant's mental health status and report the defendant's treatment and prognosis to the State and the court. *See id.* (A.R.S. § 36-4002(A) (effective Jan. 1, 2024)).

competence." Ariz. R. Crim. P. 11.6(a)(1), (4). But the "court cannot make a subsequent finding of competence unless some new evidence . . . is presented to rebut the presumption of continued incompetence." *State v. Lewis*, 236 Ariz. 336, 341, ¶ 14 (App. 2014). If the court finds the defendant is competent, "regular proceedings must begin again without delay." Ariz. R. Crim. P. 11.6(c); *see also* A.R.S. § 13-4510(B). This case, however, presents different facts.

¶20 Our caselaw, statutes, and rules govern competency proceedings and competency re-adjudications. But this case falls between these two stages. Here, the court declared Johnson incompetent and not restorable, which leads to a "presumption of continued incompetency." *See Hehman*, 110 Ariz. at 460. And the court has not re-adjudicated Johnson's competence because it dismissed the February 2021 charges and probation revocation proceedings. Even so, without court permission, the State refiled the criminal charges, and Johnson's probation officer re-petitioned to revoke his probation.

¶21 Pointing to *Nowell* and *Lewis*, Johnson argues that the State needed to prove that Johnson had regained competency before re-petitioning or refiling. But *Nowell* and *Lewis* do not control. Those cases deal with competency restoration, *see Nowell*, 219 Ariz. at 407, ¶ 28, and later competence findings, *see Lewis*, 236 Ariz. at 341, ¶ 14. Here, the court found Johnson not competent and not restorable, and he has not been determined otherwise. The question is what is necessary to start the criminal or probation revocation proceeding after a court has dismissed it based on a finding of incompetency.

### 2. The State Must Seek Court Permission to Refile and Re-Arrest a Defendant for Charges Dismissed Based on a Finding of Incompetency, Not Restorable.

¶22 The State argues it did not need to prove Johnson's competence before refiling or re-petitioning. It is true that "the [S]tate may refile charges if post-dismissal events suggest that the defendant has regained competency." *Rider*, 233 Ariz. at 317, ¶ 9. But no such events were alleged or evidenced here. The State's ability to refile is "subject to due process limitations." *Id.* at 315, ¶ 2. The State cannot "continually refile charges for the purpose of holding a defendant based only on his chronic incompetence to stand trial." *Id.* at 317, ¶ 10 (citing *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)); *see also Arizona v. Manypenny*, 451 U.S. 232, 246 (1981) (The need to restrict continued government prosecution by the prosecutor "reflect[s] a prudential concern that individuals should be free from the

harassment and vexation of unbounded litigation by the sovereign."); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."). To this end, the State must have "reasonable grounds to believe that [the defendant] may have regained competency." *See Rider*, 233 Ariz. at 317, ¶ 11.

¶23 Thus, the State cannot refile charges against a presumptively incompetent defendant without reasonable grounds showing that the defendant is now competent. The unanswered question is whether the State need only assure itself that the grounds exist before refiling and re-arresting a presumptively incompetent defendant or whether the State must first allege its facts to a court to determine whether reasonable grounds exist.

¶24 The State is concerned that requiring it to allege evidence of the defendant's competency before refiling charges will "prevent any subsequent prosecution." It contends that because the State cannot request a competency evaluation or review the defendant's medical records until it refiles the charges, "the only reasonable means to determine whether a defendant is competent or capable of being restored to competency is to reindict or refile." But the State does not have to *prove* the defendant's competency before refiling.

¶25 The incompetency presumption that arises when a court finds a defendant incompetent and not restorable requires the State to provide information to the court before refiling that supports a reasonable belief that the defendant has regained competency. *See State v. Bradley*, 102 Ariz. 482, 487 (1967) (The presumption is outweighed if evidence of restoration to competency "is accepted as satisfactory . . . *by the court*.") (emphasis added), *overruled on other grounds by State v. Harvill*, 106 Ariz. 386, 391 (1970). If the court agrees, the State may refile the charges, and either party or the court can request a competency examination. *See* A.R.S. §§ 13-4503, -4505, -4510; *see also* Ariz. R. Crim. P. 11.6(a). Such a procedure does not hinder the State's ability to reevaluate a defendant's competency.

¶26 Likewise, the incompetency presumption prevents the State from re-arresting a defendant for charges previously dismissed because of incompetency unless a court first determines whether the State has adequately alleged a reasonable belief that the defendant has regained competency. Arizona Revised Statutes Section 13-3883(A) authorizes warrantless arrests so long as there is probable cause the person committed a misdemeanor in the officer's presence or a felony. But this statute applies to an original arrest, and "[a]ll arrests, either with or without a warrant,

'must be reasonable under the circumstances.'" *Ochser v. Funk*, 228 Ariz. 365, 370, ¶ 17 (2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011)). If the State cannot allege evidence to a court supporting its reasonable belief that a person is now competent, it has not overcome the incompetency presumption and may not arrest a person for the dismissed charges. To hold otherwise would condone a "revolving door" procedure allowing the State to restrain presumed incompetent persons based on past acts without reason to believe they are now competent.[5] The warrant requirement protects incompetent persons from such unreasonable serial seizures.

¶27        But the incompetency presumption is charge-specific. The court adjudicates a defendant incompetent when it finds that the defendant either (1) cannot understand the nature and objective of the proceedings associated with the charge or (2) cannot help counsel defend the charge. *See* Ariz. R. Crim. P. 11.1(a)(2). This means that once a court has determined that a defendant is incompetent and not restorable, the State may not arrest or refile *on that charge* without returning to court to allege a reasonable basis to believe the defendant is competent. But given this charge-specific incompetency presumption, if a defendant commits a new crime, the presumption does not apply. *See, e.g.*, *Sills v. Coates*, 252 Ariz. 542 (App. 2022) (After the court found the defendant incompetent to stand trial for attempted robbery, the State could later arrest the defendant for possessing dangerous drugs.).

### 3.    **We Apply the *Rider* Standard to Renewed Petitions to Revoke Probation.**

¶28        Unlike refiling criminal charges, there is no express statute, rule, or caselaw explaining how to process probation violations by defendants who are incompetent after being placed on probation. A charge is dismissed if a court dismisses a criminal case based on a defendant's

---

[5]        Courts have rejected "revolving door" procedures resulting in continual re-arrests in other contexts. *See, e.g.*, *United States v. Holmes*, 452 F.2d 249, 260–61 (7th Cir. 1971) (After releasing a person on bail, it was improper to re-arrest the person without a warrant because there was no "purpose to be served by making [the] arrest" and to allow otherwise would justify "harassment by continual arrests."); *State v. Watkins*, 399 So.2d 153, 156 (La. 1981) (After releasing a person from custody for failure to establish probable cause, it was improper to re-arrest that person without a warrant when the person had not committed a new crime and no exigent circumstances existed.).

incompetency. *See* A.R.S. § 13-4517(A). But if a court dismisses a probation revocation petition based on incompetency, the conviction is not dismissed, and the defendant remains on probation.

**¶29** And we agree with the parties that criminal prosecutions and probation revocation proceedings are comparable enough to provide guidance in this context. For example, a complaint charging a defendant and a probation revocation petition both lead to a proceeding in which the court cannot act if the subject is incompetent. *See* A.R.S. § 13-4502(A); *see also* Ariz. R. Crim. P. 2.3, 27.8. In addition, just like a criminal conviction, probation revocation "result[s] in a loss of liberty," and probationers are entitled to due process of law before the court revokes their probation. *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82 (1973). A probationer is entitled to counsel, Ariz. R. Crim. P. 27.7, notice and an opportunity to be heard, present evidence, and confront witnesses in front of a neutral body. *Gagnon*, 411 U.S. at 786; *see generally* Ariz. R. Crim. P. 27 *et seq.* And courts from other jurisdictions have held that to follow due process, probationers must be competent during revocation proceedings.[6]

**¶30** Because of these similarities between probation revocation proceedings and criminal prosecutions, we look to *Rider v. Garcia* for guidance. *Rider* instructs that if a court dismisses charges because the defendant is incompetent, the State cannot "continually refile charges for the purpose of holding [the] defendant." 233 Ariz. at 317, ¶ 10. Similarly, we hold that once released based on a finding of incompetency and that competency is not restorable, the probation officer or State cannot continually recycle incompetent persons through the criminal justice system by re-petitioning to revoke probation based on past probation

---

[6] *See, e.g., State v. Gonzalez*, 457 P.3d 938, 944 (Kan. Ct. App. 2019) ("With probationers . . . the liberty interest at stake is sufficiently valuable and the risk of error sufficiently grave that due process requires they be competent."); *Donald v. State*, 930 N.E.2d 76, 79 (Ind. Ct. App. 2010) ("[T]he Due Process Clause of the United States Constitution requires that a defendant be competent when participating in a probation revocation hearing."); *State ex rel. Vanderbeke v. Endicott*, 563 N.W.2d 883, 888 (Wis. 1997) ("The core of the process due at a probation revocation proceeding, the opportunity for a meaningful hearing . . . is not available to an incompetent probationer."); *see also Harrison v. State*, 905 So.2d 858, 860–61 (Ala. Crim. App. 2005); *State v. Qualls*, 552 N.E.2d 957, 960 (Ohio Ct. App. 1988); *Thompson v. State*, 654 S.W.2d 26, 28 (Tex. Ct. App. 1983); *People v. Martin*, 232 N.W.2d 191, 194 (Mich. Ct. App. 1975).

violations without a reasonable basis to believe they have regained competency. *See Oligschlaeger v. Mulleneaux*, 1 CA-SA 19-0083, 2019 WL 2185161, at *4, ¶ 18 (Ariz. App. May 21, 2019) (mem. decision) (Because "the State failed to allege any facts in the petition to revoke that supported a change in [the defendant's] competency status[,] . . . the court lacked a basis to order [the defendant] to undergo continued prosecution, involuntary detention, evaluations, and hearings.").

¶31          The State's concerns about the *Rider* standard are unfounded. Contrary to the State's assertion, the probation department can access a defendant's medical records and monitor his mental health status. The Uniform Conditions of Supervised Probation require a probationer to agree to release or give consent, allowing the probation department to access information related to the probationer's treatment and progress. Ariz. Code Jud. Admin. § 6-207; *id.* App. A.

¶32          Thus, if a probationer's incompetence led a court to dismiss a revocation petition, like a criminal refiling, the incompetency presumption requires the probation officer or the State to allege facts supporting a reasonable belief that the probationer regained competency before re-petitioning for the same probation violations alleged in the previous petition. And the probationer may be re-arrested for the dismissed probation violations if the State or probation officer presents to a court a reasonable belief that the probationer has regained competency.

¶33          We recognize that A.R.S. § 13-901(D) authorizes probation officers to arrest probationers without warrants. But as explained above, regardless of statutory authorizations, all arrests must be "reasonable under the circumstances." *Ochser*, 228 Ariz. at 370, ¶ 17. It would be unreasonable to arrest a probationer for a probation violation previously dismissed because of incompetency without evidence to believe that the incompetency presumption has been overcome. We cannot construe a statutory grant of authority to exceed constitutional protections. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988) (If a statutory interpretation raises constitutional issues, we construe the statute to avoid these issues.).

¶34          If a court dismisses an incompetent probationer's petition to revoke probation and the probationer commits a new crime or probation violation, the probation officer may proceed according to the officer's authority under A.R.S. § 13-901(D). But allowing arrests for crimes or violations previously dismissed based on the probationer's incompetency would infringe on the constitutional protections against unreasonable

seizures outlined above. As a result, probation officers cannot arrest incompetent probationers for alleged violations from a previously dismissed petition until the officer provides facts showing the officer's reasonable belief that the probationer regained competency and the court issues a warrant based on this reasonable belief.

**B.     The Probation Department Re-Petitioned Based on Previously Dismissed Violations but Also Included New Allegations.**

¶35          We now turn to the facts in this case. When the court originally placed Johnson on probation in 2017, he signed the uniform condition that he would release or give consent needed for the probation department to monitor his "treatment, behavior and activities." The first petition to revoke probation alleged Johnson committed the February 2021 crimes, absconded, and failed to "participate and cooperate" in mental health screenings and treatment programs. The May 2022 petition similarly alleged that Johnson committed the February 2021 crimes, absconded, and failed to "participate and cooperate" in mental health screenings and treatment programs. The May petition asserted that Johnson "initiated contact with an unknown minor" but described the same instance that led to the February 2021 charges.

¶36          At oral argument before this court, Johnson conceded that along with the February 2021 criminal charges, the May 2022 petition included new probation violation allegations that Johnson failed to report and participate in mental health treatment. The State agreed. As a result, we need not determine whether the technical violation allegations in the May 2022 petition were new or continuing violations. Thus, Johnson's probation officer had the authority under A.R.S. § 13-901(D) to arrest Johnson for the alleged new probation violations.[7] And the petition to revoke probation did not need to contain facts supporting a reasonable belief that Johnson regained competency.

¶37          Although the May 2022 petition to revoke probation contained violations previously dismissed, and the State and Johnson's

---

[7]          We note that Johnson could have been taken into custody under the order returning him to inpatient treatment. *See* A.R.S. § 36-540(E)(5) ("If the patient refuses to comply with an amended order for inpatient treatment, the court, on its own motion or on the request of the medical director, may authorize and direct a peace officer to take the patient into protective custody and transport the patient to the agency for inpatient treatment.").

probation officer failed to offer information showing a reasonable belief that Johnson regained competency, the parties agree the petition included new violations. As a result, the superior court correctly determined that it could proceed with the petition.

## CONCLUSION

¶38        We accept jurisdiction but deny relief.

